**Leroy SMITHWICK, Petitioner,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility and Hon. Robert Abrams, Attorney General of the State of New York, Respondents.**

**90 Civ. 3525 (KTD).**

United States District Court,
S.D. New York.

Feb. 13, 1991.

180

Leroy Smithwick, Auburn, N.Y., pro se.

Robert T. Johnson, Dist. Atty., Bronx County, Bronx, N.Y. (Allen H. Saperstein, Anthony D. Grande, Asst. Dist. Attys., of counsel), for respondents.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner, Leroy Smithwick proceeding *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). On March 3, 1981, Smithwick was convicted by a jury in New York Supreme Court, Bronx County of Murder in the Second Degree, N.Y. Penal Law § 125.25(1), and Criminal Possession of a Weapon in the Second Degree N.Y.Penal Law § 265.03. After the guilty verdict was entered, Smithwick's counsel moved to set aside the verdict and for a mistrial pursuant to N.Y.Crim.Proc.Law § 330.30 on the basis that prejudicial photos were inadvertently submitted to the jury during deliberations. Appeal Transcript ("Tr.") 571–72. On April 21, 1981, Justice Jack Rosenberg, presiding at trial, granted that motion. In a written opinion entered May 22, 1981, the court found that the impermissible viewing of the photographs was prejudicial and therefore, a mistrial was warranted.

The District Attorney's office appealed. The Appellate Division, First Department, reversed the trial court's order and directed

that the verdict be reinstated (*People v. Smithwick*, 88 A.D.2d 852, 451 N.Y.S.2d 744 (1st Dept.1982)). The case was then remanded back to the Supreme Court, Bronx County for imposition of sentence. On November 8, 1982, Smithwick was sentenced to concurrent terms of imprisonment of from twenty years to life for the murder charge and five to fifteen years for the weapons charge. During this same period, Smithwick was attempting to have the original order of the trial court, setting aside the verdict, reinstated. Reargument of the Appellate Division ruling was denied as was leave to appeal to the Court of Appeals. Subsequent to sentencing, Smithwick raised these same arguments to no avail in the Appellate Division on direct appeal. Leave to appeal to the Court of Appeals was denied. On June 15, 1988, Smithwick filed another motion before the trial court to vacate the conviction. That motion was denied on December 22, 1988, and Smithwick was again unsuccessful in the Appellate Division, which also denied any further appeals.

Smithwick appears to have fully exhausted his state remedies. He now seeks this petition on the grounds that: (1) he was denied a fair trial and due process when the jury inadvertently viewed photographs that were never admitted into evidence; (2) his guilt was not proven beyond a reasonable doubt and, in the alternative, he is entitled to a new trial on the basis of newly discovered evidence; (3) he was denied the effective assistance of counsel; (4) he was deprived of a fair trial when the prosecutor unfairly summed up before the jury and, during trial, had suborned perjury of a prosecution witness; and (5) he was deprived of a fair trial by the trial court's unfair jury charge.

### STATEMENT OF FACTS

The events subject of this petition arose on the evening of July 11, 1980 when a fist fight erupted between Smithwick and an acquaintance of his, Robert Hill, in front of the "Third Palm Bar" at 165th Street near Amsterdam Avenue in Manhattan. Tr. 49–52, 174. Hill initiated the argument, complaining about some "bad cocaine" sold him by Smithwick on an occasion several months earlier. Tr. 181. James "Boobie" Burgess,[1] a witness to the fight, testified that he and a friend, Derrick Speight, entered the bar with Smithwick after the fight was over and that several others were outside and witnessed the fight as well. Tr. 174, 180.

While inside the bar, Smithwick told Burgess and Speight that he was going to batter Hill. Tr. 181–182. Speight then asked Smithwick if he was "strapped," meaning armed with a gun. Tr. 182. Smithwick denied being armed and left the bar. Approximately fifteen minutes later, Smithwick returned to the bar carrying a gun in a holster under his clothes which he showed to Speight. Speight told defendant "You don't have to kill him." Smithwick answered, "Nobody snucks [sic] me and gets away with it." Tr. 182–183. Speight and Burgess then left the Third Palm and went to "Bunky's," a nearby club. Tr. 183. Smithwick arrived at Bunky's approximately twenty minutes later. Tr. 183. Smithwick then asked Speight and Burgess if they would accompany him "so he can beat the s___ [sic] out of Bobby," meaning Hill. Tr. 183, 199. Burgess agreed to accompany Smithwick.

They took a gypsy cab to find Hill. The driver, James Battle, was directed to take Smithwick and Burgess across the 155th Street Bridge into the Bronx to the building in which Hill lived. Tr. 183–84. When no one answered, they continued back to Manhattan. As they headed back towards Manhattan, they saw Hill's car coming from the other direction. Tr. 184–85. Smithwick told the driver to turn around and follow Hill's car. They followed Hill to an apartment building at 1184 Cromwell Avenue, Bronx. Tr. 185. Hill, apparently drunk, was on his way to visit one of his girlfriends. Tr. 187. Burgess remained a

---

1. Burgess, who had previously served four years in prison on a robbery conviction, was on pa- role at the time. Tr. 175–76.

few steps behind Smithwick while he followed Hill. Tr. 187.

Hill then entered the elevator, near the entrance to the building, with Smithwick following. Tr. 187–207. Burgess, some distance behind Smithwick, then heard Smithwick say "You jive motherfucker," and a few gunshots. Tr. 188, 192, 200. Hill was fatally shot and lay dead in the elevator of his girlfriend's apartment building at 1184 Cromwell Avenue until his body was found at approximately 2:00 a.m. of July 12, 1981. Tr. 38.

Burgess testified that the gun shots took him by surprise and that he did not realize that Smithwick was either carrying a gun or intending to kill Hill. Tr. 189–192. Burgess saw Smithwick close the elevator door and replace the pistol into the holster. Tr. 191, 192. Burgess then asked Smithwick: "What did you shoot him for?" to which Smithwick replied, "Don't say nothing, just let's get out of here." Tr. 188. The two men left the building and hailed separate cabs. Tr. 188.

There was testimony that the following day, Troy Jones, Smithwick's close friend, inquired into Hill's murder. He and Smithwick spoke for about ten minutes when Jones asked if Smithwick did "it"? Smithwick did not answer directly, but responded, "look what he did to me. He fucked me up." Tr. 93–94, 118, 129. Two days later, Jones spoke to Smithwick again, eliciting from him that on July 12th, he and Burgess spotted Hill, followed him, and that Smithwick opened the elevator door, fired the gun, and walked out. Tr. 94–98, 120.

After the close of all of the evidence, the Court charged the jury and, *inter alia,* instructed them that they could see all exhibits admitted into evidence. Tr. 564. When the jury was sent out to deliberate, the clerk of the courtroom inadvertently gave the jurors an envelope containing seven black and white photographs only four of which were actually admitted into evidence. Tr. 569, 695–698 and Exhs. 1–4. The three photographs that were not in evidence depicted Hill lying in the elevator

after he was shot. Tr. 579, 699–701, Exhs. 4–6.

After deliberating for one hour, the jury recessed for dinner. While they were at dinner, the clerk retrieved the three photographs which were not admitted into evidence. Tr. 570. Because the jury was exposed to information not formally admitted into evidence, defense counsel moved for a mistrial on the ground that the jury was prejudiced by viewing the extra photographs. Tr. 571–572. Justice Rosenberg brought the jury back, asking the foreman about the photographs. Tr. 573. The foreman acknowledged having seen the photographs but stated that the jury was not prejudiced thereby. Tr. 574. After being sent back once again to deliberate, the jury took approximately twenty four hours to reach a verdict. Smithwick was found guilty on all counts. Post conviction polls of the eleven other jurors revealed no reliance on the three photographs not in evidence; they denied any impact of the photos on their reaching a verdict of guilty. Tr. 607–610, 617–619.

## DISCUSSION

I. *Effect of Photographs Not in Evidence:*

 Smithwick maintains that the photographs which were inadvertently given to the jury were prejudicial and therefore require setting aside his conviction because Smithwick's constitutional rights to a fair trial and due process were violated. The mere impermissible submission of these photographs to the jury does not in itself mandate upsetting a conviction. *See United States v. Burket,* 480 F.2d 568, 571 (2d Cir.1973) ("a sufficient answer to the attempt to secure a reversal on this score [transmission to the jury of exhibits not in evidence] might be that defense counsel was as responsible as the prosecutor for seeing to it that only proper exhibits were sent to the jury room.")

 In habeas petitions, it is presumed that the jury obeyed the court's instruction to determine petitioner's guilt based only on the proof in the evidence. *Francis v.*

*Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985). As a general rule, petitioner must establish that the asserted error was so gross as to warrant the granting of the writ. A valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The court must apply a balancing test based on that harmless error analysis. *Williams v. Henderson,* 451 F.Supp. 328 (E.D.N.Y.), *aff'd without op.,* 584 F.2d 974 (1978).

■ In this case, Smithwick suffered no prejudice by the photographs inadvertently having been given to the jury. In fact, Court's Exhibit # 4, not in evidence, was substantially similar to a photograph which had been admitted into evidence as People's Exhibit # 1. These black and white photographs depicted the decedent's body lying dead in a pool of blood inside the elevator. Blood can be detected both on the decedent's shirt and body. A pool of blood can be detected on the floor of the elevator. The other two unadmitted photographs differed slightly in that they depicted the body at a somewhat closer distance. The state court decided as a matter of fact that the difference in distance did not cause undue prejudice to Smithwick at trial. None of the photographs showed the bullet points of entry.

No photograph of a deceased person is going to be pleasant. In this case, the wounds on the decedent's body cannot be seen from the photographs. Therefore, the degree of "grotesqueness" is irrelevant and since similar photographs were admitted, the unadmitted ones could only have been a harmless error when viewed by the jury. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) (even error of constitutional magnitude may be harmless "beyond a reasonable doubt.") Moreover, any potential prejudice was squelched by the careful scrutiny and instruction by Justice Rosenberg. In this case, the mistake was corrected quickly and the photographs were removed unobtrusively. Indeed, the jury's brief exposure, in the first hour of a twenty four-hour deliberation, to the three unadmitted crime-scene photographs constituted no more than a harmless error.

That the jury took time and continued to deliberate for a full day after having the photographs speaks also of the harmlessness of the error. Indeed, it was never determined whether any of the jurors saw the photos for more than a few seconds if at all. The post-verdict sworn statements of the jurors indicated that the photographs had little or no impact on the deliberative process and that the jurors reached a fair and impartial verdict based entirely on the independent and compelling evidence. *Compare United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 (2d Cir.1970) (where jurors rely on "extra-record" facts in the course of deliberations to such extent that prejudice would result in the verdict, then verdict must be deemed inherently lacking in due process), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971). Additionally, these photographs were not "crucial, critical and highly significant" and did not remove reasonable doubt that would have existed but for these photographs. *See Collins v. Scully,* 755 F.2d 16 (2d Cir.1985) (standard on habeas review concerning denial of fair trial and due process from erroneous admission of evidence is whether such evidence was "crucial, critical, or highly significant."); *United States v. Bowers,* 660 F.2d 527 (5th Cir.1981). The record before me clearly shows that it was the great weight of other direct and circumstantial evidence which lead to Smithwick's conviction, regardless of the jury's slight exposure to the photographs.

## II. *Guilt Beyond a Reasonable Doubt:*

■ It is well settled that the federal court's role in collateral review of the state record is to consider whether there was sufficient evidence to justify any rational trier of fact to find the essential elements of the crimes were committed by the petitioner beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct.

2781, 61 L.Ed.2d 560, *reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Hawkins v. West,* 706 F.2d 437 (2d Cir. 1983). The findings of the state court are presumptively correct and entitled to a high degree of deference as that court was in the best position to view the credibility of the witnesses and all of the facts as they were adduced. *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982). Moreover, I am constrained to view the evidence in light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crimes charged. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). Here, the quality and quantity of evidence adduced by the prosecution was certainly sufficient to warrant the jury's verdict of guilty.

Looking to the record in order to establish if the evidence is sufficient, it is undisputed that Smithwick and Hill, the decedent, quarrelled earlier in the evening of the murder. According to Burgess, although Hill was the initial aggressor, he physically injured and humiliated Smithwick in front of several onlookers. Burgess' testimony is corroborated by Jones' testimony. Jones received Smithwick's admission of guilt in the fatal shooting of decedent Hill. Finally, Hill was found in the elevator with two bullets in his brain which had been shot at close range. With regard to Smithwick's sufficiency of the evidence claim, any rational trier of fact could have found Smithwick guilty beyond a reasonable doubt. *See Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984) (applying *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ Smithwick also maintains that due to newly discovered evidence, which includes the testimony of Anthony Cook, a jailhouse confidant of Burgess, would be applicable to show Smithwick's innocence and that on the basis of this new evidence, Smithwick should be entitled to a new trial. Federal habeas relief is available on grounds of newly discovered evidence only if the new evidence discovered bears on

constitutionality of petitioner's detention. *Swindle v. Davis,* 846 F.2d 706 (11th Cir. 1988). Evidence which goes only to the guilt or innocence of petitioner is not sufficient to require habeas corpus relief. *See id.* (citing 18 [28] U.S.C. § 2254 (1982)) (newly discovered evidence that victim was killed by another individual is not reviewable because it clearly goes to the guilt or innocence and thus does not form the basis for habeas corpus relief); *Walker v. Lockhart,* 763 F.2d 942 (8th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986). Even if this new evidence is true and applicable, it pertains to the question of Smithwick's guilt or innocence and not to the constitutionality of his detention, thus, this is not a basis for a federal habeas corpus relief. This testimony is relevant only inasmuch as it perhaps should have been used to impeach Burgess' credibility. That, however, is not collaterally reviewable, considering that no error of constitutional magnitude arose as a result of its omission.

### III. *Ineffective Assistance of Counsel:*

The Sixth Amendment to the Constitution affords all people right to counsel constrained to render "reasonably effective assistance given the totality of the circumstances." Smithwick alleges that he was denied this effective assistance because his counsel failed to: (a) request a circumstantial evidence and missing witness charge; (b) object to an improper summation by the prosecutor; (c) request a charge of the lesser included offenses of first and second degree manslaughter; (d) object to the court's alibi charge; and (e) impeach an unreliable eyewitness with a prior inconsistent statement.

■ In order to prove ineffective assistance of counsel, petitioner must prove that his attorney's actions, viewed in the totality of the circumstances, were unreasonable and that petitioner suffered some prejudice because a reasonable probability exists that, but for counsel's unprofessional errors, the result of the trial would have been different. Petitioner must show that counsel's performance fell below an "objective

standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–89, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.... [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional conduct.

*United States ex rel. Roche v. Scully,* 739 F.2d 739 (2d Cir.1984) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 Smithwick fails to allege facts sufficient to overcome the elemental presumption that a lawyer acts competently and conscientiously. In this case, counsel immediately moved for a mistrial upon notice that the jury inadvertently viewed photographs which were not admitted into evidence. Counsel acted prudently, zealously, and in the best interests of his client. Indeed, counsel undertook the only reasonable actions that were available to him under the circumstances. A petitioner is not entitled to expect miracles or to second guess every trial strategy foregone or omitted as long as the omissions were not gross and unduly prejudicial. None of the omissions as alleged by Smithwick indicate denial of effective assistance of counsel.

IV. *Prosecutor's Unfair Summation and Subornation of Perjury:*

 To establish a constitutional violation based on improper comments by the prosecution during summation, a petitioner must demonstrate that the prosecutor's remarks had such a prejudicial effect that the petitioner was denied a fundamentally fair trial. *Darden v. Wainwright,* 477 U.S. 168, 179–82, 106 S.Ct. 2464, 2470–72, 91 L.Ed.2d 144 (1986). Smithwick avers that the prosecutor's summation was improper and that he allowed Burgess, a key prosecution witness, to commit perjury with respect to whether he actually viewed Smithwick with the gun.

Counsel, however, made no objection with respect to the prosecutor's closing argument and thus no argument is preserved for collateral review absent a finding that Smithwick was unduly prejudiced thereby. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). The record before me does not indicate that an egregious error was committed by the prosecutor in his summation. Indeed, Justice Rosenberg found nothing unusual or prejudicial in the People's summation and he was in the best position to have recognized improper argument and provided corrective instruction. *See Arce v. Henderson,* 477 F.Supp. 71 (S.D.N.Y.1979), (claims of prosecutorial misconduct, however, are matters of state law which should be remedied by state courts), *aff'd without op.,* 636 F.2d 1200 (2d Cir.), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1989, 68 L.Ed.2d 305 (1980). The record does not indicate error so egregious as would be cognizable on collateral review. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (errors must be so egregious as to either singularly or collectively result in denial of constitutional due process); *compare, Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985) (fair trial denied because summations referred to evidence not admitted which evidence proved to be highly signifi-

cant, crucial or critical to the outcome of the case.)

 Furthermore, the mere speculation upon which Smithwick relies to substantiate his claim that the prosecutor suborned Burgess' perjury falls short of its mark. Specifically, Smithwick argues that in view of a prior inconsistent statement to the police, Burgess' testimony constituted blatant perjury. A prior inconsistent statement does not rise to the level of perjury. It was up to defense counsel to impeach Burgess. Furthermore, a petitioner is not entitled to habeas corpus relief on a claim of knowing use of perjured testimony where the falsity of the testimony complained of was known to defense. *Compare Smith v. Oklahoma*, 418 F.Supp. 907 (W.D.Okla.1976) (conviction on testimony known to prosecution to be perjured constitutes denial of due process). Neither does Monday morning quarterbacking provide sufficient basis to collaterally upset a state verdict, requiring a new trial and calling for further corroborative testimony. Indeed, several witnesses attested to the fact that Smithwick carried a gun and had the requisite intent to commit the crimes as charged. That Burgess' testimony was not independently corroborated does not negate the overwhelming circumstantial evidence otherwise.

## V. *Improper Jury Charge:*

 Smithwick objects to the charge on several grounds the first of which he contends is because his alibi defense was prejudiced by the court's instruction to the jury that they were the "seekers of truth" and as such it was up to them "find [Smithwick's] alibi trustworthy." Tr. 487–88, 491–92, 501–503, 530–532. This alone however, did not serve to improperly shift the burdens. Indeed, the Judge referred three times to the People's burden of disproving the defendant's alibi beyond a reasonable doubt. Tr. 530–32. Any further commentary in the instruction, thus, did not shift the burden of proof because the basic charge included numerous references to the People's burden of proof beyond a reasonable doubt. *See Mullings v. Meachum,*

864 F.2d 13 (2d Cir.1988) (it is axiomatic that a single instruction to a jury may not be judged in artificial isolation, but, must be viewed in the context of the overall charge) (citing *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973)); *Wright v. Smith*, 569 F.2d 1188, 1192–94 (2d Cir.1978). Additionally, Justice Rosenberg used laymen terms in order to explain to the jury their role. The jury's verdict of guilty was arrived at fairly and upon an overwhelming weight of the evidence.

 Smithwick next takes issue with the fact that the court submitted whether Burgess was an accomplice as a question of fact to the jury, but not as a question of law, which would have required corroborative evidence. This is a matter within the discretion of the trial judge and was thus done properly. *See Perez v. Metz*, 459 F.Supp. 1131 (S.D.N.Y.1977) (a witness' status as an accomplice as a matter of law is solely a question of state law and within trial court's discretion to leave with jury as a matter of fact), *aff'd without op. sub nom. Perez v. Harris*, 603 F.2d 214 (2d Cir.1979). The evidence did not prove Burgess indisputably and conclusively engaged in assisting or promoting the murder of Hill. An accomplice as a matter of law charge was not warranted by a reasonable view of the evidence. Moreover, this charge was never requested by defense counsel. A state trial court's failure to marshal evidence *sua sponte* raises no issue of constitutional magnitude that could be made a basis of a habeas corpus petition in federal court. *United States ex rel. Laudati v. Ternullo*, 423 F.Supp. 1210, 1216–17 (S.D.N.Y.1976). Finally, the requirement of accomplice corroboration is solely a product of New York State law. *Lee v. Henderson*, 342 F.Supp. 561, 566 (W.D.N.Y.1972). Under Federal law, it has long been established that a defendant can indeed be convicted on the uncorroborated testimony of an accomplice. *Gonzalez v. Henderson*, No. 85–7304 (S.D.N.Y. Oct. 20, 1988) (LEXIS, Genfed library, Dist file 14248). It follows then that the ruling of the court and Smithwick's challenge does not raise issue of constitutional dimension.

Besides, there was plenty of credible evidence to support the jury's finding of guilt of the crimes charged.

 Smithwick contends that it was in violation of his due process rights that the court never delivered a circumstantial evidence charge to the jury. Under federal law, jurors are entitled to consider both direct and circumstantial evidence and permitted to give equal weight to both forms of evidence. 1 L. Sand, Modern Federal Jury Instructions ¶ 5.01, at 5–9, 5–10 (1990) (citing *United States v. Roman*, 870 F.2d 65, 76 (2d Cir.1989). Habeas corpus relief is not available to set aside a conviction on the basis of erroneous jury instruction or for failure to deliver a circumstantial evidence charge unless the trial was rendered so fundamentally unfair thereby, amounting to a denial of due process. *Shepherd v. Nelson*, 432 F.2d 1045 (9th Cir.1970). Smithwick's argument is belied by Jones' testimony that he was told directly by Smithwick that: "We opened the [elevator] door and fired ..." at Hill. Thus, a charge regarding circumstantial evidence would have been superfluous and unnecessary and does not warrant a second-guess at this juncture. *See United States v. Rucker*, 586 F.2d 899 (2d Cir.1978) (Second Circuit adopts rule and now holds that the law recognizes no distinction between direct and circumstantial evidence for purposes of assessing its value); *See also United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir.1974) (alleged error in state trial court's unobjected to charge must be so abhorrent as to result in constitutional violation), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975); *accord Gomez v. Beto*, 402 F.2d 766, 767 (5th Cir.1968), *cert. denied*, 394 U.S. 936, 89 S.Ct. 1217, 22 L.Ed.2d 469 (1969). Thus, the state court's omission did not render the trial so fundamentally unfair as to amount to a denial of due process for the great weight of the direct evidence was sufficient to base Smithwick's conviction.

 Smithwick next maintains that he was entitled to a lesser included offense charge of manslaughter. Collateral review is not available for untimely requests for jury instructions on lesser included offenses. Requests for a jury charge are timely if made before the jury begins to deliberate. *Rice v. Hoke*, 846 F.2d 160, 164 (2d Cir.1988). I cannot determine from the record whether such request was interposed. Assuming, therefore, that such request was timely brought:

> A trial judge must charge the jury on the lesser included offenses when (1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense.

*Rice v. Hoke*, 846 F.2d at 165 (citing *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973)).

In any event, the circuits are split on the issue whether collateral review is available for an omission of a lesser included offense charge in a non-capital case. Although the Second Circuit has yet to rule on this issue, "[t]he Fifth, Eighth, and Ninth Circuits hold that failure to instruct on a lesser offense does not present a federal constitutional question and therefore will not be considered in a federal habeas proceeding." *Rice v. Hoke*, 846 F.2d at 164 (citing *Cooper v. Campbell*, 597 F.2d 628, 631 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979); *James v. Reese*, 546 F.2d 325, 327 (9th Cir.1976); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975)). Whereas, "the Third, Sixth, and Seventh Circuits hold that federal courts have jurisdiction to review the refusal to instruct on lesser included offenses if the refusal deprived the defendant of due process." *Rice v. Hoke*, 846 F.2d at 164–65 (citing *Bishop v. Mazurkiewicz*, 634 F.2d 724, 725 (3d Cir.1980), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); *Brewer v. Overberg*, 624 F.2d 51, 52 (6th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Davis v. Greer*, 675 F.2d 141, 143–44 (7th Cir.), *cert. denied*, 459 U.S. 975, 103 S.Ct. 310, 74 L.Ed.2d 289 (1982)).

 In this case, a manslaughter instruction was unwarranted for insufficient

evidence to predicate a reasonable belief that Smithwick intended to commit the lesser included offense of manslaughter. It is possible to have the *mens rea* to commit murder without ever having formed the *mens rea,* or lack thereof, for manslaughter. "A defendant can be convicted of manslaughter in the first degree if he establishes extreme emotional disturbance as an affirmative defense to murder in the second degree." *Rice v. Hoke,* 846 F.2d at 165. Smithwick never interposed an affirmative defense of extreme emotional distress because he chose to assert an alibi in its stead. If Smithwick was at home with his wife during the shooting as claimed in his alibi, then how does the affirmative defense of extreme emotional distress figure into the puzzle?

Additionally, Smithwick avers that a missing witness instruction was never given to the jury for the failure of the People to produce the cab driver, who took Smithwick to the apartment house in the Bronx where Hill was shot. Smithwick was not legally entitled to a missing witness charge concerning the cab driver because this witness was not under the prosecution's control. The defense had as much power and control over the cab driver's appearance as did the prosecution. In any event, the cab driver's testimony would be cumulative. Thus, it cannot be characterized as error, let alone error of constitutional proportion, for counsel to strategically choose not to produce every possible witness especially one who could add very little to the basic rendition of facts as offered by several other witnesses.

In conclusion, a valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdale,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Here, the evidence of Smithwick's guilt of the murder of Robert Hill is overwhelming. Any errors committed by counsel or the Court at trial were, if error at all, certainly harmless errors.

For the foregoing reasons, Smithwick's writ of habeas corpus is hereby denied in its entirety and the petition is dismissed. A certificate of probable cause will issue and leave to appeal *in forma pauperis* is granted for an appeal taken in good faith.

SO ORDERED.