Juan SANTOS, Petitioner,

v.

Anthony ZON, Supt., Respondent.

No. 01 CIV. 3512(VM).

United States District Court,
S.D. New York.

June 14, 2002.

Juan Santos, Cape Vincent Correctional Facility, Cape Vincent, NY, pro se.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

*Pro se* petitioner Juan Santos ("Santos") filed a Petition for a Writ of Habeas Corpus, under 28 U.S.C. § 2254, on April 26, 2001 (the "Petition"), attacking his November 20, 1998 state-court conviction of criminal possession of a controlled substance, violating New York Penal Law § 220.16(1). Santos claimed that the conviction violated his right to due process, guaranteed by the Fourteenth Amendment of the United States Constitution, because the State of New York (the "State") failed to prove, with sufficient evidence, the intent-to-sell element of the charged offense.

Respondent Anthony Zon ("Zon"), Superintendent of the State's Cape Vincent Correctional Facility, opposed Santos's petition. The Court denied Santos's Petition

by Order of May 31, 2002, which stated that a more detailed analysis of the Court's reasoning would be provided in a subsequent Decision.

## I. FACTS

Santos was convicted, after a jury trial in the State Supreme Court, New York County, for criminal possession of a controlled substance in the third degree and sentenced to four and one-half to nine years imprisonment. Santos's conviction stemmed from an October 16, 1997 incident wherein he was observed by police officers Robert Sormani ("Officer Sormani") and Joseph Pecoraro ("Officer Pecoraro") selling crack cocaine to four different buyers.[1]

At trial, the State presented eyewitness testimony and physical evidence. Officer Sormani testified that he witnessed, in a 15–20 minute time span, Santos engage in a pattern of activity that appeared to be drug dealing. Officer Sormani was the only police officer to actually observe, with the aid of binoculars, Santos sell the crack cocaine to four persons, who appeared to him to be buyers. At the time of the sales, Officers Sormani and Pecoraro were positioned on the rooftop of a building with a view of the street where Santos was standing. Because the officers were on top of the building and had only one pair of binoculars, Officer Pecoraro was unable to witness the actual drug sale transactions.

Officer Sormani testified that he observed Santos meet with the four buyers and that during each separate transaction Santos removed small plastic bags from either a red or black key box and exchanged them with the customer for money. Officer Pecoraro corroborated Officer Sormani's testimony by testifying that he listened to Officer Sormani describe the drug sale transactions as they took place; Officer Sormani, each time that he observed a sale with the aid of his binoculars, told Officer Pecoraro, "[t]here's another one." Further, both officers testified as to the physical evidence they recovered at the crime scene when they arrested Santos, which was directly after the fourth drug sale transaction. The physical evidence recovered at the time of Santos's arrest included $101.00 in small denominations (ranging from $20.00 to $1.00 bills) found on Santos's person, two bags of crack cocaine found in a red key box in Santos's possession, a black key box, and a beeper. Moreover, the State presented evidence that Santos possessed no drug paraphernalia at the time of his arrest and that he appeared to be sober. The State argued that the officers' testimony, combined with the circumstantial evidence recovered at the time of the arrest, proved Santos possessed the narcotics with the intent to sell them.

In his defense, Santos introduced the testimony of his employer at the time of the incident, Diana Velasquez ("Velasquez"). Velasquez testified that she paid Santos his salary "off the books" on the day of his arrest, but that she did not have any specific recollection of the denomination of the bills with which she paid him on that day. Santos argued that Velasquez's testimony offered a reasonable, alternative explanation for why he was carrying $101 in small bills on the night of the arrest.

Moreover, on cross-examination, Santos tested Officer Sormani's credibility by inquiring into Officer Sormani's prior arrest

---

1. The facts summarized herein are derived from Santos's Petition, Santos's legal memorandum submitted in support of the Petition (the "Memo"), Santos's reply brief (the "Brief"), and Santos's appellate brief submitted to the Appellate Division of the New York Supreme Court (the "Reply").

of Santos on an unrelated charge. Officer Sormani denied any knowledge of that arrest, but was impeached by Santos's introduction of Officer Sormani's written complaint relating to the arrest.

The jury found Santos guilty. Santos appealed the conviction to the Appellate Division of the New York Supreme Court (the "Appellate Division"), arguing that his conviction violated his right to due process guaranteed by the Fourteenth Amendment because the State failed to prove, with sufficient evidence, that he intended to sell the crack cocaine in his possession. The Appellate Division summarily rejected Santos's appeal and affirmed the conviction. *See People v. Santos*, 278 A.D.2d 110, 717 N.Y.S.2d 536 (App. Div. 1st Dept. 2000). The instant petition followed.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

As an initial matter, where a party appears *pro se*, the courts are obliged to broadly construe the party's pleadings and interpret them "to raise the strongest argument they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

Santos's petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The Act provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1). The Second Circuit has noted that "the AEDPA 'place[s] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus,' but only 'with respect to claims adjudicated on the merits in state court.'" *Jenkins v. Artuz*, —— F.3d ——, 2002 WL 483547, at *5 (2d Cir. Apr.1, 2002) (quoting *Williams v. Taylor*, 529 .U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'Connor, J.)). Thus, the threshold question is whether Santos's due process claim was adjudicated "on the merits" by the Appellate Division. If Santos's claim was adjudicated "on the merits," the AEDPA's deferential standard of review applies; conversely, if the claim was not adjudicated "on the merits," the pre-AEDPA *de novo* standard of review is applicable. *See Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001).

A state court adjudicates a claim "on the merits" "when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Jenkins*, 2002 WL 483547, at *5 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001)). To determine whether a state court disposition is "on the merits," the Court asks " '(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance on procedural grounds rather than a determination on the merits.' " *Id.*

██ Given the Brief Santos submitted to, and the decision of, the Appellate Division, it is plain that Santos's due process claim was raised and adjudicated "on the merits." In the Brief, Santos cites rele-

vant Supreme Court case law and the Fourteenth Amendment itself to support his claim that his rights were violated because his conviction was based on insufficient evidence. (*See* Brief, at 8.) The Appellate Division summarily rejected all of Santos's claims, both state and federal, although it did so without specific reference to federal case law or the federal claim. *See Santos*, 717 N.Y.S.2d at 536. However, specific reference to federal law by the state appeals court is not necessary to determine that the federal claim was adjudicated "on the merits." *See Sellan*, 261 F.3d at 314 (holding the Appellate Division's use of the word "denied" sufficient to satisfy the "on the merits" requirement, notwithstanding failure to cite any federal case law or appellant's federal claims).

Additionally, the Appellate Division did address Santos's due process claim, albeit without specific reference to federal law, when it stated, "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence." *Santos*, 717 N.Y.S.2d at 536. Although the Appellate Division's summary rejection of Santos's claims affords this Court little insight as to the state court's reasoning, the Court believes the limited language supplied by the Appellate Division evinces the adjudication of Santos's claim "on the merits." [2] For the foregoing reasons, the Court finds that Santos's federal claims were adjudicated "on the merits" by the Appellate Division because Santos's Brief raises the federal claim and the Appellate Division's judgment summarily rejects it. Accordingly, the Court's review of this matter is limited to the deferential standard required by AEDPA § 2254(d).

### B. *THE RELEVANT CONSTITUTIONAL STANDARD*

Applying AEDPA's deferential standard of review, the Court must determine whether the Appellate Division's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Initially, the Court must determine whether Santos's claim is based on "federal law 'clearly established' by the Supreme Court." *Sellan*, 261 F.3d at 309. A court is "constrained to apply 'clearly established Federal law,' as determined by the holdings, not dicta, of the United States Supreme Court." *Morris v. Reynolds*, 264 F.3d 38, 46 (2d Cir.2001). The applicable constitutional standard is set forth by the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There, the Supreme Court held that the relevant question in evaluating a prisoner's insufficient evidence due process claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Accordingly, the Court here evaluates whether the Appellate Division's decision was contrary to, or an unreasonable application of, the *Jackson* standard.

A writ of habeas corpus may be issued for insufficiency of evidence only if "the state courts have unreasonably applied the *Jackson* standard. Federal review of these claims therefore now turns on

**2.** The Court notes that the Appellate Division failed to cite any case law, state or federal, to support its decision to deny Santos's claim. Nevertheless, the Court notes that New York's legally sufficient evidence standard "derives from the federal constitutional due process right discussed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *Monserrate v. Greiner*, No. 00–4785, 2001 WL 812151, at *10 (S.D.N.Y. July 19, 2001).

whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson's* 'no rational trier of fact' test." *Monserrate,* 2001 WL 812151, at *10 (quoting *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997), *vacated and remanded on other grounds,* 522 U.S. 801, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997)). Under this deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

■ The Fourteenth Amendment's due process clause prohibits a criminal conviction unless there is proof beyond a reasonable doubt of every element necessary to constitute the crime with which the defendant has been charged. *See Jackson,* 443 U.S. at 316, 99 S.Ct. 2781. A court, when considering the sufficiency of a state law conviction, "must look to state law to determine the elements of the crime." *Id.* at 324, 99 S.Ct. 2781. Next, a court must consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Sup. Ct. of New York,* 109. F.3d 836, 839 (2d Cir.1997). The petitioner faces a "heavy burden" because "the evidence must be viewed in the light most favorable to the state and all permissible inferences must be construed in its favor." *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Monserrate,* 2001 WL 812151, at *11 (citing *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993)). Moreover, "the findings of the state court are presumptively correct and entitled to a high degree of deference as that court was in the best position to view the credibility of the witnesses and all of the facts as they were adduced [at trial]." *Smithwick v. Walker,* 758 F.Supp. 178, 184 (S.D.N.Y.1991) (citing *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)).

Santos's insufficient evidence claim relates exclusively to the intent-to-sell element of the crime for which he was convicted, criminal possession of a controlled substance in the third degree. Santos admits that he "knowingly and unlawfully possesse[d] a narcotic drug." (*See* Brief, at 12; Reply, at 4.) Santos's claim that the State failed to prove, with sufficient evidence, the intent-to-sell element is based primarily on the alleged inadequacy of the trial testimony of Officer Sormani. (*See* Brief, at 8–12.) Santos argues that Officer Sormani's testimony is inadequate because Santos believes that the officer lacked credibility and that the officer had a vendetta against him stemming from a previous arrest.

The Court is unable to assess the "fact[-]specific credibility judgments by juries or to weigh conflicting testimony [o]n collateral review." *Kirby v. Senkowski,* 141 F.Supp.2d 383, 393 (S.D.N.Y.2001) (quoting *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996)). Also, the Court "must presume that the jury resolved any questions of credibility in favor of the prosecution." *Id.*

■ Applying these standards, the Court finds that the Appellate Division's denial of Santos's claims was neither contrary to, nor an unreasonable application of, the *Jackson* standard. "*Any* rational trier of fact" may have determined that Officer Sormani's testimony, along with the testimony of his partner, Officer Pecoraro, and the circumstantial evidence retrieved at the crime scene, proved Santos's guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). At trial, Santos presented an

alternative theory for his possession of the drugs but did not convince the jury of it. Such a verdict is not unreasonable. For the foregoing reasons, the Court finds that the Appellate Division's denial of Santos's insufficient evidence claim was not unreasonable.

*ORDER*

For the reasons documented above, it is hereby

**ORDERED** that the Court's Order dated May 31, 2002 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that petitioner Juan Santos's petition for a writ of habeas corpus is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**