**George Danny COLLINS,
Plaintiff-Appellant,**

v.

**Charles SCULLY, Defendant-Appellee.**

**No. 460, Docket 84–2131.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1984.

Decided Feb. 6, 1985.

Henriette D. Hoffman, The Legal Aid Society, Federal Defender Services Unit, New York City, for plaintiff-appellant.

Steven J. Rappaport, Asst. Dist. Atty., Kew Gardens, N.Y. (John J. Santucci, Dist. Atty., Queens County, Kew Gardens, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

George D. Collins, a state prisoner convicted of murder in the second degree, attempted robbery, and criminal possession of a weapon, appeals from an order of the Southern District of New York, Charles E. Stewart, Jr., *Judge*, dismissing his *pro se* application for a writ of habeas corpus, which he sought on the ground that he was denied due process by reason of the state trial court's erroneous admission of hearsay at the trial that resulted in his conviction, 582 F.Supp. 1100. We affirm.

On May 9, 1977, three men attempted an armed robbery of a jewelry store in Queens County, New York, owned and operated by Arthur and Ehrna Schwartz, husband and wife, who were present in the store at the time of the attempt. When Mr. Schwartz exchanged fire with the robbers he was fatally shot and one of the robbers was later found wounded in the getaway car, in which there was a spent shell matching bullets found in the jewelry store. During the incident Mrs. Schwartz, who kept the robbers in sight at close range throughout the robbery, which lasted several minutes, recognized two of them, including Collins, as persons she had waited on for 20 to 30 minutes that morning and whom she had observed at a distance of 4 to 5 feet in the well-lit store. At the time of the robbery one of Collins' confederates was wearing a gold medallion that she had sold him that morning.

Detective Joseph Lyons conducted an investigation that led to the arrest and trial of Collins, whose first trial ended in a mistrial, second trial ended in a hung jury, and third trial resulted in the conviction that is the subject of the present petition. At the third trial Mrs. Schwartz positively identified Collins as one of the robbers, testifying also that she recognized him as one of two persons who had been waited on by her in the jewelry store the morning of the murder. She was able to describe the attempted robbery in detail, including her pursuit of the robbers after they exited the store, at which time she pointed them out to police officers who ran after them and arrested the wounded man in the getaway car. The officers described one of the fleeing robbers as a black person about 5 feet 8 inches tall and 140 to 155 pounds in weight, which approximates Collins' measurements. Mrs. Schwartz also testified that she thought that when they were in the store that morning, the two men had "indicated" that they had sold a used Nikon camera to Mr. Schwartz the week be-

fore, although she had not been present at the earlier sale. She had turned over to Detective Lyons the store's ledger book in which her husband had listed only one individual, Jimmy Johans, as the seller of the camera.

Detective Lyons, called as a state witness, testified that he had examined the Schwartz ledger book and a Nikon camera which was recorded in the ledger book as having been sold to Mr. Schwartz. Upon being asked who sold the camera to Mr. Schwartz he replied "Jimmy Johans and Danny Collins" even though the ledger showed only Jimmy Johans as the seller. At that point the trial was temporarily disrupted by Collins' overturning of the defense table. The jury was excused temporarily with directions to "disregard what happened here." In response to a defense objection to the admission of the reference to Collins the prosecutor stated that the inclusion of Collins' name in the answer came as a complete surprise to him since he had advised Lyons to stay away from a confession that had been suppressed on Sixth Amendment grounds. The trial judge then overruled the objection, denied the defense's motion for a mistrial and advised counsel that he would "take care of it" by questioning the officer. Upon the jury's return the judge, questioning Lyons in a manner intended to discredit the statement, elicited that Collins' name did not appear in the ledger and that Lyons' inclusion of Collins' name was not based on personal knowledge or on the ledger but on "heresay" [sic] heard "from somewhere else." The judge also denied a further defense motion requesting a mistrial on the ground that the court's interrogation was inadequate to cure the error.

In his summation the defense counsel stated that Detective Lyons' reference to Collins as one of the persons who had sold the camera to Schwartz was hearsay and that the judge would direct the jury not to consider it. However, the judge did not so instruct the jury but instead told it to disregard the defense counsel's comments regarding the admissibility of evidence. During its deliberations the jury asked to have

the testimony of Mrs. Schwartz and Lyons read to it but after hearing her testimony decided that it did not want his read. The jury later returned a verdict finding Collins guilty on all counts. The conviction was affirmed without opinion by the Appellate Division, *People v. Collins,* 84 A.D.2d 689, 443 N.Y.S.2d 672 (2d Dep't 1981), and leave to appeal was denied by the New York Court of Appeals, 55 N.Y.2d 828, 447 N.Y. S.2d 1040, 432 N.E.2d 148 (1981). In a reasoned opinion filed on March 6, 1984, Judge Stewart denied Collins' petition for a writ of habeas corpus.

### DISCUSSION

 In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial, *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), a concept we have described as "elusive," *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). When evidence is erroneously *excluded* the test for determining whether the ruling denied the defendant a fair trial is whether it would have created "a reasonable doubt that did not otherwise exist," *United States v. Agurs, supra,* 427 U.S. at 112, 96 S.Ct. at 2401; *accord Taylor, supra,* at 891; *United States v. Cody,* 722 F.2d 1052, 1062–63 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984). In applying that test we therefore evaluate what the impact of the excluded evidence would have been if it had been admitted.

 The question before us on this appeal is whether a different test should be applied when evidence is erroneously *admitted,* which requires us to assay the probable impact of that evidence. Collins argues that more demanding scrutiny is required when the jury has actually been exposed to the erroneously admitted proof than when the evidence has been excluded

and that the test should be whether, if the evidence had not been admitted, there was a significant possibility that the jury would have had a reasonable doubt. We disagree. We are not here simply being called upon to apply rules of evidence that might permit the state court in its discretion to grant a new trial but rather are dealing with a more fundamental constitutional concept of fairness. The standard in our view should therefore be whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been "crucial, critical, highly significant," *Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir.1982) (internal quotation marks omitted).

 In the present case, it is clear that the state trial judge erred in admitting Officer Lyons' hearsay reference to Collins as one of the persons from whom Schwartz had purchased the camera. *Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). The testimony was not based on personal observation or on Schwartz's ledger book. In support of his argument that the hearsay was highly prejudicial to him, Collins points to the fact that the second trial, at which Lyons did not so testify, terminated in a hung jury. However, at the second trial

Mrs. Schwartz gave much more positive testimony that Collins was present at the earlier sale of the camera to her husband and did not qualify her testimony, as she later did at the third trial, by stating that she was not present when the camera was sold to her husband.[1] Thus, at the second trial, unlike the third, the jury might have erroneously inferred that she was present at the sale of the camera. We can only conclude, therefore, that the earlier deadlock was probably attributable to causes other than the absence of the Lyons hearsay.[2]

Applying the foregoing standard, we cannot on this record label the hearsay evidence a sufficiently substantial, significant or crucial factor to have denied Collins the fundamentally fair trial required by the Due Process clause. The properly admitted evidence against Collins was very strong, including the firm, unwavering eyewitness testimony of Mrs. Schwartz, who had had ample opportunities to observe Collins at close range, who identified him at trial, and whose general description of him following the crime matched that furnished by officers (who had chased him as he fled from the scene) and approximated Collins' appearance. The erroneously admitted hearsay did not directly attribute to Collins the commission of the crime charged; it indicated only that a week or two previously Collins may have been present when a camera was sold to Mr.

---

1. At the second trial Mrs. Schwartz, describing how she waited on Collins and his companion Carter for 20 minutes on the morning of the murder and sold a gold medallion to Carter, testified:

 "Q. Now, Mrs. Schwartz, did there come a time that these two men that you waited on left?
 A. Yes.
 Q. Before leaving—by the way, did you wait on them alone?
 A. I waited on them alone, but they had a conversation with my husband who was sitting at a desk.
 Q. Who had a conversation with your husband?
 A. It seemed they both did. I can't say one or the other. It seemed it was a three-way conversation.
 Q. Did you hear that conversation?
 A. Yes.

 Q. What was that conversation about?
 A. Seemed that they had sold my husband a camera a week before, a Nikon.
 "MR. BRETT: Objection, Judge,
 THE COURT: Overruled.
 MR. BRETT: It's unresponsive to the question.
 THE COURT: I find it is. Overruled.
 A. They sold him a camera the week before and they said they would be back. They had some lenses that they wanted to dispose of, they have no use for."

2. The transcript of the second trial, for instance, reveals efforts by defense counsel to show that Mr. Schwartz had shot and killed a person who attempted to rob him at his store on an earlier occasion and that he may have been the first to fire a weapon on the occasion of the present attempted robbery.

Schwartz. There was apparently no evidence at trial identifying Jimmy Johans, the man named in the ledger as the seller of the camera, as one of the robbers. Moreover, Mrs. Schwartz's testimony about the prior sale was tentative and general, and she admitted that she had not been present at the transaction. In this light, the erroneously admitted evidence was hardly significant as corroboration. In fact, the jury could as likely have thought that the detective was simply repeating Mrs. Schwartz's testimony as that he had heard it from one of the other people he interviewed. Lastly, although the state court trial judge erred in not directing the jury to disregard the hearsay, he weakened any impact it might have had by eliciting from Lyons in a deprecating tone that the statement was not based on his personal knowledge and that the ledger book from the store did not contain Collins' name. In short, we cannot here conclude that an "absence of ... fairness fatally infected the trial," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982).

For the foregoing reasons the order of the district court is affirmed.