Oscar **REALPE**, Petitioner,

v.

Charles **SCULLY** and Robert
**Abrams**, Respondents.

No. 84 Civ. 4923.

United States District Court,
S.D. New York.

July 7, 1986.

Oscar Realpe, pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for respondents; Adina Kling, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, Oscar Realpe, is now serving two concurrent indeterminate sentences of from fifteen years to life, following his conviction, with other codefendants, in the Supreme Court of the State of New York of the criminal sale of a controlled substance in the first degree[1] and criminal possession of a controlled substance in the first degree.[2] His judgment of conviction was unanimously affirmed upon appeal[3] and leave to appeal to the Court of Appeals was denied.[4]

Petitioner seeks to void his judgment of conviction pursuant to 28 U.S.C. § 2254 upon two separate grounds: (1) that the trial court violated his federal right to due process of law by refusing to grant his requested jury instruction on agency in the purchase of narcotics, a defense available under New York law; and (2) that the prosecution impermissibly introduced evidence of another crime for which petitioner had been arrested and charged. It is not disputed that he has exhausted available state remedies.

The Court referred petitioner's application to Magistrate Leonard Bernikow for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate, in a comprehensive report which analyzed and considered petitioner's claims, the factual background as developed upon the trial and the applicable law, recommended that petitioner's application be denied. The petitioner, appearing pro se, has filed objections to the report and recommendation. The Court, upon a de novo study of the trial record, petitioner's state appellate and current briefs, consideration of his conten-

1. N.Y. Penal Law § 220.43.

2. N.Y. Penal Law § 220.21.

3. *People v. Realpe,* 99 A.D.2d 686, 471 N.Y.S.2d 727 (1st Dep't 1984).

4. *People v. Realpe,* 62 N.Y.2d 622, 476 N.Y.S.2d 1036, 464 N.E.2d 495 (1984) (Kaye, J.).

**286**

tions and the applicable law, accepts the Magistrate's recommendations.

Petitioner's first claim of denial of due process is based upon the doctrine of the New York State Court of Appeals that "one who acts solely as the agent of a purchaser of narcotics cannot be convicted of the crime of criminal sale of a controlled substance."[5] As otherwise stated by the Court:

> [I]n a prosecution for the sale of a controlled substance, a person who acts solely to accommodate the buyer acts as the alter ego of the recipient. Since the Penal Law does not impose criminal sanctions for the mere purchase of narcotics, the agent is held to the same degree of criminal liability as his principal from whom culpability is derived. Thus, where there is some reasonable view of the evidence which lends support to the claim that the defendant acted as an instrumentality of the buyer, upon a timely request, the court should instruct the jury on the agency defense.[6]

Based on this agency defense concept under the New York law,[7] the petitioner contends that the evidence was sufficient to permit a reasonable finding by the jury that he procured and effected the delivery of the cocaine merely to accommodate a friend and that the Court's refusal to grant his request for an agency charge deprived him of his due process right to a fair trial.

The minute details of events leading to the petitioner's arrest and conviction are fully set forth in the Magistrate's thorough report. In broad outline, Carlos Palacio, who had been arrested for possession of cocaine, agreed to cooperate with drug enforcement authorities upon promises that his efforts would be called to the attention of the appropriate authorities in his case. Sometime thereafter, about July 1980, Palacio was introduced by a friend to the petitioner who worked at the Rio Negro, a bar-restaurant in Queens, and met with him almost daily there and at other bars as drinking companions with their discussions centering in the main on females and double dating. After about a week of such social meetings, at the end of July or early August 1980, Palacio asked petitioner if he knew anybody who sold cocaine; that he had a friend who was interested in buying one-eighth of a kilogram of cocaine. Petitioner said he could supply any amount of cocaine Palacio's friend wanted.

About September 18 or 19, 1980, petitioner called Palacio and said he had one-eighth of a kilogram of cocaine that would cost $8,000 and they arranged that the transaction be consummated on September 22 at the Rio Negro restaurant. Palacio, together with an undercover agent appeared at the appointed time and place, but petitioner did not. However, he called Palacio later that evening and after an apology for his non-appearance, a new appointment was arranged to close the transaction the next day, September 23, at a Holiday Inn in New York City.

On September 23 at about 6:45 p.m., Detectives Johnson and Rodriguez of the Task Force went to the Holiday Inn bar to meet Palacio and petitioner. Rodriguez was to be the purchaser of the cocaine. Meanwhile, at about 7 p.m., Palacio met with petitioner at the Rio Negro restaurant

---

5. *People v. Roche,* 45 N.Y.2d 78, 81, 407 N.Y.S.2d 682, 684, 379 N.E.2d 208, 210, *cert. denied,* 439 U.S. 958, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978); *see also People v. Sierra,* 45 N.Y.2d 56, 60, 407 N.Y.S.2d 669, 672, 379 N.E.2d 196, 199 (1978); *People v. Argibay,* 45 N.Y.2d 45, 53, 407 N.Y.S.2d 664, 667–68, 379 N.E.2d 191, 194–95 (1978) (per curiam); *People v. Lam Lek Chong,* 45 N.Y.2d 64, 73, 407 N.Y.S.2d 674, 679, 379 N.E.2d 200, 205, *cert. denied,* 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978). The "agency defense" doctrine has not the unanimous support of New York's highest court. *See* dissenting opinion of Judge Gabrielli, joined by Judge Jasen, in *People v. Roche, supra.*

6. *People v. Feldman,* 50 N.Y.2d 500, 503–04, 429 N.Y.S.2d 602, 604, 407 N.E.2d 448, 450 (1980) (per curiam).

7. The existence of a claimed agency relationship is no defense to a charge of criminal possession of a controlled substance in the first degree. *People v. Roche,* 45 N.Y.2d 78, 87, 407 N.Y.S.2d 682, 688, 379 N.E.2d 208, 214, *cert. denied,* 439 U.S. 958, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978); *People v. Sierra,* 45 N.Y.2d 56, 407 N.Y.S.2d 669, 379 N.E.2d 196 (1978).

where petitioner told Palacio he was waiting for a friend to bring the cocaine. Shortly thereafter, co-defendant Jose Viveros Bolivar appeared and was introduced by petitioner to Palacio.

Bolivar asked Palacio whether he knew to whom they were going to sell the cocaine; Palacio told Bolivar that he had been doing business with the person for five years. After making a telephone call, Bolivar said they would have to go to 72nd Street and Northern Boulevard in Queens. Bolivar got his jacket from his car and then he, petitioner and Palacio drove in the latter's car to 72nd Street and Northern Boulevard where they met codefendants Edilberto Brava and Zulma Barona, who were in a red Monte Carlo. Bolivar got into the Monte Carlo, which followed petitioner and Palacio to the Holiday Inn in Manhattan, where both cars double parked across the street from the Holiday Inn.

Palacio entered the hotel alone and told Rodriguez, the undercover police officer, that the cocaine was in the red Monte Carlo. Palacio returned to his car and told petitioner that his friend was waiting inside for them. Palacio and petitioner walked over to the red Monte Carlo and the jacket Palacio had seen earlier that evening in Bolivar's possession was passed from Bolivar to Bravo, who handed it to his wife and who gave it to petitioner.

Petitioner, together with Palacio, returned to the Holiday Inn where they met undercover officer Rodriguez at the bar. Rodriguez asked petitioner if he had the cocaine, who then motioned to the jacket he was holding and said the price would be $8,000. Rodriguez, Palacio and petitioner all proceeded to Palacio's car. Once inside the car, petitioner pulled a brown paper bag out of the jacket and gave the bag to Rodriguez which contained two separate clear plastic bags. Rodriguez field tested the contents of one of the plastic bags and decided it was cocaine but told petitioner it was not sufficiently pure and that $8,000 was too much for cocaine of that quality.[8] Thereupon, petitioner and Rodriguez negotiated the price and $7,900 was agreed upon. Rodriguez gave petitioner $7,900 in cash.

Rodriguez indicated he was interested in purchasing several kilograms of cocaine, to which petitioner responded that his connection expected to receive three pounds in the near future. When Rodriguez asked for his telephone number, petitioner declined and said that Rodriguez should communicate with Palacio, who would get in touch with him. Petitioner stated that the price for a kilogram would be roughly $60,000.

When Rodriguez left the car with the purchased cocaine, petitioner and Palacio drove off, followed by the red Monte Carlo. While driving, petitioner took some bills from the $7,900 that he had received from Rodriguez and told Palacio that he had to give the rest to co-defendant Bravo. On 58th Street, between Fifth and Madison Avenues in New York City, Palacio parked, whereupon the Monte Carlo double parked next to him; petitioner got out and gave the remainder of the $7,900 to the co-defendants Bravo and Bolivar. Several weeks after the transaction, on October 6th, petitioner and the co-defendants were arrested.

Upon the foregoing facts, which are undisputed, the petitioner's claim that it was a deprivation of his constitutional right to due process of law for the trial court to refuse to grant his agency defense request is without substance. The evidence abundantly established that he intentionally and knowingly participated in the sale of a substantial amount of narcotics, effected its direct delivery to the purchaser (undercover agent Rodriguez), set the initial price and negotiated a reduction when an issue was raised as to its quality, received the then agreed upon price from the purchaser from which he retained a portion for himself and significantly, at the time of the transaction, discussed the future sale of kilograms of narcotics for $60,000 a kilogram. This was not a case of attempting to get a "fix" for a friend to satisfy his

---

8. Subsequent examination revealed that the bags contained 4.32 ounces of cocaine.

craving need for drugs. It was an intentional commercial sale in which petitioner was a principal participant. It was a transaction involving the sale of a large quantity of narcotics at a substantial cash sum, with the prospect of future sales by petitioner in even greater quantities. To suggest upon the facts here presented that petitioner was merely doing a favor for a friend flies in the face of common sense and experience.

■ The determination of whether a defendant was in fact accommodating a friend or was simply a street-wise peddler attempting to avoid his criminal responsibility for a sale is generally a factual question for the jury to resolve under the circumstances of each case.[9] However, upon the facts of the instant case, as a matter of law, there was no reasonable view of the evidence from which the jury could conclude that in engaging in the illicit transaction petitioner acted solely as the agent of the buyer.[10] At the very least his role was that of a middleman, or broker. Petitioner had never met Rodriguez until he was introduced to him by Palacio. Petitioner was the one who then negotiated the transaction, produced and delivered the cocaine to Rodriguez after agreeing upon the sales price, and upon its receipt retained a portion for himself. "[T]he testimony essential to the verdict in favor of the People leads to the inevitable conclusion that defendant was not merely accommodating the buyer, but was acting, if not as a principal seller, then at the very least as a middleman or a broker for the supplier."[11] The

evidence upon the trial did not require submission of the requested charge on the agency defense and it was not a deprivation of petitioner's right to due process to deny the request. Accordingly, the first ground asserted to sustain the writ is denied.

■ The next ground upon which petitioner seeks to void his judgment of conviction is that he was on trial solely for his participation in the cocaine transaction of September 23, 1982, yet testimony was received which he asserts indicated he was also involved in another illicit drug transaction on October 6, the day of his arrest, for which he was later separately indicted.[12] No direct testimony as to the October 6 alleged criminal conduct was given by any witness.[13] Nonetheless, petitioner argues that from testimony at the trial, the jury was informed of and could not escape knowledge of the October 6 charge in violation of the general rule against introducing evidence solely to establish that one is criminally disposed to commit the crime charged.[14] His basic contention is that information as to the October 6 conduct was so inflammatory and highly prejudicial as to constitute a violation of his due process right to a fair trial.

To sustain this claim he refers to a portion of the testimony of Detective Robert D. Johnson, who arrested the petitioner on October 6, 1982. Johnson, in the course of the usual processing, had obtained from petitioner's possession an address book that contained the names, addresses and telephone numbers of various persons. At

9. See People v. Lam Lek Chong, 45 N.Y.2d 64, 74, 407 N.Y.S.2d 674, 680, 379 N.E.2d 200, 206, cert. denied, 439 U.S. 435, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978).

10. People v. Lam Lek Chong, 45 N.Y.2d at 76–77, 407 N.Y.S.2d at 681–82, 379 N.E.2d at 207.

11. People v. Argibay, 45 N.Y.2d 45, 50, 407 N.Y. S.2d 664, 666, 379 N.E.2d 191, 193 (1978) (per curiam).

12. As to the October 6, 1980 charges, petitioner pled guilty to the criminal sale of a controlled substance in the second degree on September 15, 1981.

13. See Trial Tr. at 60–61, 329–30, 365–66.

14. See People v. Smith, 63 N.Y.2d 41, 64, 479 N.Y.S.2d 706, 716, 468 N.E.2d 879, 889 (1984), cert. denied, —— U.S. ——, 105 S.Ct. 1226, 84 L.Ed.2d 364 (1985); People v. Allweiss, 48 N.Y.2d 40, 46, 421 N.Y.S.2d 341, 344, 396 N.E.2d 735, 738 (1979); People v. Vails, 43 N.Y.2d 364, 368, 401 N.Y.S.2d 479, 481–82, 372 N.E.2d 320, 322–23 (1977); People v. Montanez, 41 N.Y.2d 53, 58, 390 N.Y.S.2d 861, 865–66, 359 N.E.2d 371, 375–76 (1976); People v. Molineux, 168 N.Y. 264, 291–93, 61 N.E. 286 (1901).

the trial Johnson was asked with respect to the book if he recognized the names of any individuals "pertaining to this case" and he identified Palacio and petitioner's co-defendants, Bravo and Bolivar. Johnson was then asked if he recognized any other names. He responded he believed he did, but before he could elaborate, the prosecuting attorney cut him off by asking "does it pertain to these individuals before this court right now?" Johnson replied: "No."

No objection was made at the time by petitioner's attorney to this evidence, which he now contends, as already noted, conveyed to the jury and highlighted that petitioner had another narcotics charge against him in addition to those for which he was on trial.[15] The claim that based upon the foregoing testimony the jury was informed of another pending charge against petitioner is sheer speculation. Its lack of substance is perhaps best demonstrated by the failure of counsel to object thereto at the time the testimony was offered.[16]

 Petitioner's further contention is even of less substance. As noted under the discussion of the trial evidence, undercover agent Rodriguez testified that during the consummation of the transaction involving the sale of cocaine for $7900, the petitioner stated his connection was due to receive about three pounds of cocaine in the near future and that he would get back to Rodriguez. Petitioner argues that "[i]t is utterly far-fetched to believe that the jury would not link" Rodriguez's testimony as to a future transaction with Johnson's testimony regarding the telephone book and the evidence of petitioner's arrest in front of the Holiday Inn on October 6.[17] Again this is sheer speculation which disregards the totality of the record. Moreover, the attempt to draw the conclusion that petitioner advances in effect would bar the prosecution from offering material evidence to sustain its charge. There can be no question of the admissibility of the conversation which Rodriguez had with petitioner during the course of the negotiation and consummation of the sale of cocaine on September 23rd, including his statements as to a future transaction.

"Viewed objectively in light of the entire record before the jury," neither Johnson's nor Rodriguez's vague references to petitioner's conduct on October 6th was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without [their statements]."[18]

The application for a writ of habeas corpus is denied upon the merits.

So ordered.

---

15. The day following this testimony counsel moved for a mistrial.

16. *See Engle v. Isaac,* 456 U.S. 107, 136 n. 1, 102 S.Ct. 1558, 1577 n. 1, 71 L.Ed.2d 783 (1982) (Stevens, J. concurring) ("The failure to object generally indicates that defense counsel felt that the trial error was not critical to his client's case; presumably, therefore, the error did not render the trial fundamentally unfair.") *See also People v. Zambito,* 92 A.D.2d 729, 729, 461 N.Y.S.2d 123, 124 (4th Dep't 1983).

17. Petitioner's Appellate Division Brief, at 21.

18. *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir. 1985).