Russell McMURRAY

v.

Victor T. HERBERT, Superintendent, Collins Correctional Facility.

No. 92 CV 1692 (DRH).

United States District Court, E.D. New York.

Dec. 1, 1992.

Russell McMurray, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., by Monica R. Jacobson, Asst. Atty. Gen., New York City, for respondent.

MEMORANDUM AND ORDER

HURLEY, District Judge.

In the above-referenced action, Russell McMurray petitions the Court for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Victor T. Herbert, the Superintendent of the Collins Correctional Facility, is named as respondent. Petitioner makes this request for relief based on an August 8, 1988 judgment of the Supreme Court, Queens County. He claims that he was denied his due process right to a fair trial because 1) another judge allegedly approached the trial judge and asked him to help the assistant district attorney obtain a conviction; 2) the jury was allowed to see photographs found in a bag belonging to petitioner that was not in evidence; and 3) a witness who had previously identified defendant from an impermissibly suggestive showing of a photograph was allowed to identify him in court. For the reasons stated below, the Court finds petitioner's claims to be without merit. His application is denied.

## BACKGROUND

On July 26, 1986, at approximately 10:00 A.M., Bibi Insanally entered an elevator on the eleventh floor of an apartment building in Queens County. As she stepped into the elevator, she noticed another occupant, a male, approximately 5'9" in height, who was wearing a blue T-shirt and carrying a duffle bag on his shoulder. During the time the elevator went from the eleventh floor to the eighth floor, Bibi Insanally faced the man. When the elevator stopped on the eighth floor, the man stepped out, glanced to the left and to the right, and stepped back into the elevator. When he re-entered the elevator, he said to Insanally, "This is a robbery, give me everything you have." The man, facing her, held a knife to her throat. She removed her bracelet and pocketbook and gave them to him. When the elevator door opened on the seventh floor, the man rushed out.

When she arrived on the first floor, Insanally told the doorman what had happened, and the doorman radioed for assistance. When security officer Colon and his partner arrived in response to the call, Bibi Insanally spotted the man across the street and said, "That's the guy who just mugged me."

The security officers pursued the man, and security officer Colon yelled at the man, who then turned around. As they approached him, he dropped the duffle bag he was carrying. The guards placed him on the ground on his stomach, attempting to cuff him, but he managed to escape. The guards returned to the apartment building with the duffle bag.

Meanwhile, in response to a radio communication, Police Officer Druckman and his partner arrived at the apartment building and spoke to Bibi Insanally. She accompanied the officers in their car and drove around the corner to see if she could locate the individual, but failing to do so, they returned to the building. When the security guards returned, they gave the duffle bag to Police Officer Druckman. In the presence of Bibi Insanally, the officers opened the bag and took out the contents. She immediately recognized the knife, the T-shirt the male had worn, and her pocketbook. Also included among the contents were papers, a social security card, a driver's license and some photographs. Police Officer Druckman showed the photographs to Bibi Insanally and she immediately identified the man in the photographs as the person who had robbed her approximately ten minutes earlier. The person in the photographs was identified as Russell McMurray, the petitioner.

At trial, petitioner's duffle bag was not allowed into evidence, although the jury was permitted to see the photographs found in the bag. Moreover, Ms. Insanally made an in-court identification of petitioner. The jury found petitioner guilty of robbery in the first degree, criminal possession of stolen property in the third degree, and possession of a weapon in the fourth degree. As a second violent felony offender, he was sentenced to concurrent terms of ten to twenty years for robbery in the first degree, one year for criminal possession of stolen property in the third degree, and one year for possession of a weapon in the fourth degree.

Petitioner appealed his convictions to the Appellate Division, Second Department. He claimed that 1) there was an appearance

of impropriety on the part of the presiding judge, mandating a new trial; 2) the victim's·identification was based on an impermissibly suggestive showing of a photograph and should have been suppressed; and 3) the People did not establish by clear and convincing evidence that the victim had an independent source, apart from the photograph, for the in-court identification of petitioner.

By Decision and Order dated August 19, 1991, the Appellate Division affirmed the judgment of the Supreme Court, 175 A.D.2d 886, 573 NYS2d 734, noting that since the victim had seen the defendant during the commission of the crime, had given a detailed and accurate description to the police immediately following the event, and had made the photographic identification within fifteen minutes of the robbery, the showing was not unduly suggestive.

Petitioner sought leave to appeal to the Court of Appeals of the State of New York, which denied his application on November 14, 1991.

As noted above, petitioner currently seeks federal relief in this Court asserting that he was denied his due process right to a fair trial because 1) another judge allegedly approached the trial judge and asked him to help the assistant district attorney obtain a conviction in the trial; 2) the trial judge abused his discretion when he allowed photographs found in a duffle bag to be shown to the jury, even though the bag was suppressed because of a break in the chain of custody; and 3) an in-court identification by the victim, after she had identified petitioner from an impermissibly suggestive showing of a photograph, was improperly permitted.

Because these claims were presented to the state court on his direct appeal in a manner that put the state court on notice as to their federal nature, the Court finds that petitioner has exhausted his state remedies. *See Petrucelli v. Coombe*, 735 F.2d 684, 687–88 (2d Cir.1984). The Court now turns to the merits of the present petition.

## DISCUSSION

### A. *Appearance of Improbity*

■ Petitioners's first claim is that he was denied a fair trial because another judge allegedly approached the judge who presided over his trial and asked him to help the assistant district attorney obtain a conviction. Petitioner does not claim to have personal knowledge of such a communication. Instead, he refers to some comments made by his trial attorney at his sentencing hearing. His trial attorney stated, in relevant part, the following:

> I was approached by an individual whose name I cannot reveal at this time, except that I will indicate to Your Honor, because I know there has been some conversation between myself and Your Honor, that it was not a member of your own staff, neither your law secretary or your personal secretary or anybody who shares your chambers with you. And that individual indicated to me that a conversation had taken place between yourself and Justice Demakos.
>
> Justice Demakos approached you and indicated to you that you should help the female District Attorney obtain a conviction against my client ... I was told by this individual that Your Honor responded, that you had known me for some years, that you would not do such a thing, either to myself or to another attorney appearing before you. That it was not your practice as a trial judge to permit any acts of impartiality [sic] as a trial judge, and you let lawyers try the cases.
>
> I think, that even though I am the trial attorney for Mr. McMurray, and you gave Mr. McMurray a fair trial and I say that here in the presence of the Court, on the record, ... I ask that this Court set aside the verdict.

Record of April 25, 1988, pp. 3–8.

In *Gayle v. Scully*, 779 F.2d 802, 805 (2d Cir.1985), a habeas corpus proceeding, the Court of Appeals examined whether the petitioner was denied his federal constitutional right to a fair trial due to apparent bias on the part of the state trial judge. The *Gayle* Court noted that the standards

for determining whether the right to a fair trial had been abridged by virtue of a bias of a state trial judge were "somewhat ill-defined." 779 F.2d at 805–806. However, the Court, citing *Daye v. Attorney General*, 712 F.2d 1566 (2d Cir.1983), *cert. denied* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), delineated the concerns which the standards address. First, a biased trial judge creates a risk that the jurors will be distracted from finding the facts, applying the law and then reaching a fair verdict. 779 F.2d at 806. Second, such a judge may create the risk that the trial will not be perceived as a fair adjudication of guilt or innocence by a "neutral magistrate". *Id.*

In this case, not only is petitioner relying on unsubstantiated hearsay in support of his claim, but his attorney at sentencing specifically acknowledged both that the trial judge declined the alleged request *and* that, in any case, the judge gave petitioner a fair trial. In the absence of some showing of bias on the part of the trial judge, the Court fails to see the merits of this claim.

### B. *Evidentiary Issue*

██ Petitioner claims that he was denied a fair trial because the trial court permitted the jury to see the photographs contained in the duffle bag despite the fact that the bag itself was not allowed into evidence.

The law is clear that "[i]n order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment, he must show that the error was so pervasive as to have denied him a fundamentally fair trial". *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir.1985) (citing *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). Specifically, the mere finding of an error made by a state court in making an evidentiary ruling does not necessarily create a constitutional issue. Moreover, it must be evident that the improper admission of the evidence "remove[d] a reasonable doubt that would have existed on the record without it" and was " 'crucial, critical, [and] highly signifi-

cant.' " *Collins*, 755 F.2d at 19 (citations omitted).

Petitioner has failed to demonstrate how he was prejudiced by the jury's brief viewing of the contents of the bag, let alone how its admission "remove[d] a reasonable doubt that would have existed ... without it". In fact, the victim's testimony reveals that she had the opportunity to observe petitioner very closely during the commission of the crime, and that she properly identified him to security officers immediately after the incident. In light of this testimony, the viewing of the contents of the bag cannot be said to have been a "crucial, critical, [and] highly significant" element in the case. Petitioner's claim on this ground is denied.

### C. *Admission of Identification Testimony*

██ Petitioner claims that he was denied his due process right to a fair trial by the admission into evidence of the victim's in-court identification of petitioner.

As stated, shortly after the robbery and within a few blocks of the incident, Insanally was shown a photograph found in the duffle bag her assailant dropped. Insanally was able to identify the man in the photograph as petitioner. This scenario is akin to a "show-up", whereby a witness is shown a suspect "singly" for the purpose of identification. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). While the "show-up" procedure may be, by its very nature, suggestive, "a claimed violation of due process of law in the confrontation depends on the totality of the circumstances surrounding it." *Id.* A "show up", therefore, is not always constitutionally defective. Indeed, "show-ups" are often approved by reviewing courts in instances in which they occur shortly after the crime has occurred. *See Russell v. United States*, 408 F.2d 1280, 1284 (D.C.Cir.), *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). In such cases, the procedure permits the witness to make an identification as soon as is practicable, thus ensuring against possible

mistaken identifications based upon faded and faulty memory. *Id.*

In this case, Insanally's viewing of the photograph of petitioner occurred shortly after the robbery and within a few blocks of the incident. Thus, her image of her assailant was still fresh in her mind. Such a prompt viewing will " 'if anything promote fairness by assuring reliability.' " *Russell*, 408 F.2d at 1284 (citing *Wise v. United States*, 383 F.2d 206, 209 (D.C.Cir. 1967), *cert. denied*, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968)). Moreover, the record in this case does not reveal anything unusually suggestive about the viewing. Accordingly, the Court concludes that the viewing did not violate petitioner's due process rights.

This conclusion does not rest on a finding that Insanally's identification was in fact reliable. Because the Court has found that the viewing was not suggestive, the Court need not reach this question. However, the Court notes that even if the viewing were suggestive, the in-court identification would have been permissible.

■ It is well settled that a suggestive pre-trial identification will bar a subsequent identification in the jury's presence only when, under the totality of the circumstances, the prior procedure gives rise to a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977). Emphasizing that "reliability is the linchpin in determining the admissibility of identification testimony," the Court in *Manson* pointed to the importance of such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty exhibited by the witness at the confrontation, and the length of time between the crime and the identification. *Id.* at 114–16, 97 S.Ct. at 2253–54.

In this case, the hearing record indicates that Insanally had an adequate opportunity to view the assailant's face and observed him face to face as she entered the elevator.[1] In addition, she stood only two feet away from her assailant and observed him the entire time the elevator descended. When the elevator stopped, the assailant once again stood face to face with Insanally.

Insanally's opportunity to view her assailant is borne out by her description of him, which she provided to the police prior to her viewing of the photograph. Insanally described the perpetrator as a black male, about 30 years old, 6 feet tall, weighing 175 pounds, with black hair and black eyes. At the time of this incident, petitioner was within one year and 15 pounds of matching Insanally's description. In addition, she was able to observe the color of the perpetrator's T-shirt, sweatpants and duffle bag and also recalled that he was wearing sneakers at the time of the robbery. Finally, the identification of the photograph of petitioner occurred only ten minutes after the robbery took place, at a time when the image of the assailant was still fresh in Insanally's mind. In light of the "totality of the circumstances", and presuming the correctness of the findings of the state court, the Court finds there was not a "substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254.

In sum, the Court concludes that Insanally's viewing of the photograph was not unduly suggestive, and, even if it was, the viewing procedure did not result in a "substantial likelihood of irreparable identification." Accordingly, the hearing court's determination that Insanally's in-court identification of petitioner was admissible did not deprive him of a fair trial.

## CONCLUSION

For the reasons stated above, this Court finds that the instant petition is without

---

1. The Court notes that as a general proposition, the findings of a trial court, if supported by the hearing record, are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 540, 101 S.Ct. 764, 765, 66 L.Ed.2d 722 (1981).

merit. Accordingly, petitioner's application for a writ of habeas corpus is denied.

SO ORDERED.