### Mark STEWART (97–A–2787), Petitioner,

v.

### William MAZZUCA, Superintendent of Fishkill Correctional Facility, Respondent.

### Nos. 00–CV–1376 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

July 23, 2003.

Morgan J. Dennehy, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

### JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

## I. Facts and Procedural History

Petitioner was charged with counts stemming from an armed robbery in which he was allegedly a participant. Evidence at trial included the testimony of two complainants, Courtney Brown and Clint Hines, who stated that while they were using a pay telephone outside of a restaurant they were approached by two men. One of the men, whom both identified as petitioner, took out a pistol and told Hines, "Don't run." Hines ran nonetheless and heard a shot fired, presumably at him. He turned around and saw petitioner pointing a smoking gun at Brown's chest. The second assailant went through Brown's pockets. Brown then pushed him and ran away. The man with the gun then fired, hitting Brown in his left midsection. Hines ran into the restaurant to tell Brown's wife that Brown had been shot. He then went back out to the street and saw the man with the gun, who told him, "Don't come up here."

At the scene, Hines described the shooter as a black man, 5 foot 6 inches to 5 foot 7 inches tall, with short hair and a Jamaican accent. Brown described the shooter as a black male, about 25 to 28 years old, about 5 foot 8 inches tall, with a slim to medium build, clean-shaven and Jamaican. Neither noticed anything unusual about the shooter's face. Both complainants

were from Miami, and neither knew the shooter.

Petitioner was convicted of second degree attempted murder; first degree assault; three counts of first degree attempted robbery; second degree criminal possession of a weapon; and third degree criminal possession of a weapon. Petitioner was acquitted of first degree attempted assault. He was sentenced to 12–1/2 to 25 years in prison.

The Appellate Division held that petitioner's sentence had been illegally imposed, and reduced it to 8–1/3 to 25 years in prison. In all other respects petitioner's convictions and sentence were affirmed. Leave to appeal to the New York Court of Appeals was denied. Petitioner initiated no state collateral proceedings.

In the instant application for a writ of habeas corpus, petitioner makes one claim: that he was denied his due process right to a fair trial by the introduction of irrelevant and prejudicial testimony that the police looked for and arrested him on the basis of information not divulged to the jury, which improperly bolstered the complainants' identification testimony.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001)

(quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is … grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S.

255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996).

## V. Certificate of Appealability

This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VI. Analysis of Claim

█ Petitioner claims that he was denied his due process right to a fair trial by the introduction of irrelevant and prejudicial testimony that the police looked

for and arrested him on the basis of information not divulged to the jury, which improperly bolstered the complainants' identification testimony. This claim is exhausted and was not deemed procedurally barred by the state courts. It may therefore properly be entertained by this court pursuant to the review standards set forth by AEDPA.

Petitioner complains in particular about the testimony of an investigating detective. Under direct examination, the detective stated he spoke with the complainants on the day of the incident and was given a description of the two assailants. The following questions from the prosecutor and the detective's answers immediately followed:

Q  Did there come a time when you were looking for someone with regard to this case?

A  Yes.

Q  [Whom] were you looking for?

A  For Mark Stewart.

Q  After there came a time when you were looking for Mark Stewart in regard to this case, did you happen to speak to anyone after January 23rd, 1995?

A  Yes.

Q  Who did you speak with?

A  On January 25th, I spoke to a woman by the name of Joyce Stewart, [who is] Mark Stewart's mother.

. . . .

Q  After you spoke with Joyce Stewart, ... Mark Stewart's mother, what things did you do?

A  After that conversation, between January and August of 1995 there was surveillances that were done on a house at 86 East 32nd Street on a restaurant itself, and on the block of Rogers Avenue between Sullivan and Montgomery Streets.

. . . .

Q  What happened during this surveillance, was there any success in finding Mr. Stewart?

A  No, there wasn't.

. . . .

Q  Did there come a time that you had a conversation with any detectives in Springfield Massachusetts?

A  Yes.

Q  With regard to Mark Stewart?

A  Yes.

. . . .

Q  When you learned that Mark Stewart was in Springfield Massachusetts, what did you do?

A  On February 1st, 1996, myself along with another detective went to Springfield and brought Mark Stewart back to Brooklyn.

Trial Tr. at 190–93. Petitioner claims that this testimony bolstered the complainants' identification testimony and "could only have led the jury to conclude that there was information independent of the complainants' identification testimony linking [petitioner] to the crime." Br. for Defendant–Appellant at 13. Because the detective also noted that he had spoken with members of the crowd gathered near the scene of the incident, petitioner contends that jury must have drawn the inescapable conclusion that petitioner's name was obtained from members of the crowd that witnessed the crime but were not called to testify at trial.

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The standard is "whether the erroneously admitted evidence, viewed objec-

tively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.' " *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985) (quoting *Nettles v. Wainwright,* 677 F.2d 410, 414–15 (5th Cir. 1982)). This test applies post-AEDPA. *See Wade v. Mantello,* 333 F.3d 51, 58 (2d Cir.2003).

■ In the context of eyewitness identifications, "the testimony of a third party (typically, a police officer) to the effect that the witness identified a defendant as the perpetrator on some prior occasion is generally inadmissible." *People v. Buie,* 86 N.Y.2d 501, 634 N.Y.S.2d 415, 658 N.E.2d 192, 197 (1995). This rule, with modifications, has been codified by New York Criminal Procedure Law section 60.25. See *id.*

■ The detectives testimony was a form of indirect hearsay—i.e., that people had told him someone looking like the petitioner did the act. The problem is infrequently recognized by attorneys or by trial courts. *See Mitchell v. Hoke,* 745 F.Supp. 874, 876 (E.D.N.Y.1990) ("indirect hearsay" describes testimony in which the "act of the hearer ... leads by direct inference to the precise words of the speaker"). When a witness gives such testimony, the declarant's "credibility must be evaluated to determine its probative force, and the hearsay rule should generally be applied in order to prevent an 'end run' around the proscription against admitting otherwise inadmissible evidence." *Jelinek v. Costello,* 247 F.Supp.2d 212, 274 (E.D.N.Y.2003).

Nevertheless, little, if any, prejudice resulted since the direct identification by eyewitnesses was so strong. Petitioner was identified at trial by both of the complainants. Any hint that the jurors may

have gleaned concerning out-of-court identifications made by unsworn witnesses would have had almost no weight. To the degree the trial court erred, the error did not deprive petitioner of a fundamentally fair trial. Habeas relief is not warranted on this ground.

## VII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to petitioner's claim, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.